**Kristie ARTES–ROY, Plaintiff–Appellant,**

v.

**ASPEN, (The) CITY OF, a Colorado municipal corporation; Gary Lyman, individually and in his official capacity as a Building Inspector for the City of Aspen, Colorado, and Pitkin County, Colorado and as CEO of the Aspen–Pitkin Regional Building Department, Defendants–Appellees.**

No. 93–1448.

United States Court of Appeals, Tenth Circuit.

July 28, 1994.

Rita M. Farry, Denver, CO, for plaintiff-appellant.

Daniel J. Torpy of Watson, Nathan & Bremer, Denver, CO, for defendants-appellees.

Before LOGAN, SETH, and BARRETT, Circuit Judges.

LOGAN, Circuit Judge.

Plaintiff Kristie Artes–Roy appeals the district court's judgment granting defendants Gary Lyman and the City of Aspen summary

judgment on plaintiff's claims asserted under 42 U.S.C. § 1983.[1]  At issue are plaintiff's claims that defendant Lyman violated her First and Fourth Amendment rights by unlawfully entering her home, and that the City is liable because Lyman's actions were taken pursuant to the City's unconstitutional policy or practice and because the City failed to train its employees properly.[2]

I

Plaintiff's husband obtained a building permit from the Aspen–Pitken Regional Building Department for renovations at the couple's home.  When the building department staff noted that no one had called for any of the required inspections, although sufficient time had passed for much of the remodeling to be completed, one of the department's building inspectors went to plaintiff's home. When plaintiff failed to produce documentation of any inspections or a copy of the building plans as required by the building code, the inspector issued a stop work order.

Plaintiff's husband, who was out of the country at the time, telephoned defendant Lyman, the chief building inspector.  The two men agreed to meet to discuss the stop work order when plaintiff's husband returned to Aspen in two weeks; in that discussion defendant Lyman was asked to stay away from the house because plaintiff was suffering from an anxiety disorder and was under a doctor's care.

Shortly thereafter, the building inspector who had issued the stop work order noted construction activity continuing at the home. He again informed plaintiff that all work had to stop, and reported to Lyman, his supervisor, that construction work[3] was continuing.

Lyman and the inspector then went to plaintiff's home where they informed several workers on the roof that they were violating the stop work order.  Defendant Lyman then went to the door of the house.  At this point factual discrepancies exist between plaintiff's deposition testimony describing crucial events at the front door of her home, and the testimony of Lyman and a police officer present at the house.  Lyman's deposition testimony indicates that he spoke with plaintiff outside the home immediately upon his arrival, after she came out of the house to see what was happening.  I App. 114.  He stated that he informed her that he needed to speak to all the workers concerning the stop work order and that she went back into the house, before Lyman and the police officer knocked on the front door a second time.  *Id.* at 114–15.  In his deposition, Lyman testified that after knocking several times, cracking the door a little bit and yelling, a worker answered the door and motioned him into the home.  He testified that he was barely inside the door and the other workmen's supervisor was present.  *Id.* at 115–16.

Plaintiff, however, asserts that when she first discovered Lyman in her entryway, he was not accompanied by a police officer. II App. 333–34.  She testified that she had no idea how Lyman entered the house; she also stated that there were no workers in the

---

**1.** Plaintiff also asserted claims under 42 U.S.C. § 1985 against these defendants.  The district court granted defendants summary judgment on the § 1985 claims after noting that plaintiff had failed to respond "in any fashion to this portion of the defendants' motion."  III App. 599–600. On appeal, plaintiff has not made any arguments specifically addressing her § 1985 claims. Therefore, we deem these claims to be abandoned. *See, e.g., Bledsoe v. Garcia*, 742 F.2d 1237, 1244 (10th Cir.1984) (failure to address contention in appellate brief waives issue).

**2.** After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9.  The case is therefore ordered submitted without oral argument.

**3.** The parties disagree as to what type of work these employees were doing.  Defendants argue that structural work was being done, noting that the workers were primarily carpenters and the tools removed from the house were carpentry tools.  Plaintiff, on the other hand, asserts that the only work ongoing in the home at this time was finishing work, for example, painting and varnishing, as well as cleaning bricks and floors.

Assuming, for summary judgment purposes, that only finishing work was being done in the home, plaintiff correctly asserts that this type of work ordinarily would not require a building permit.  The purpose of the stop work order in this case, however, was to preclude exactly this type of work, to prevent further encasement of the plumbing, electrical and structural work that required inspection.

three or four rooms closest to the front door who could have let him in. *Id.* at 334.[4] According to plaintiff, Lyman told her at that time that a police officer was on his way to the house. *Id.* at 333. Plaintiff stated she then went to the back of the house to notify the workers that Lyman wanted to speak with them. *Id.* at 334–35. She then returned to the entryway and found Lyman was still there, this time accompanied by the police officer. *Id.* at 336. She asked Lyman and the officer to leave the house, and they did. *Id.*

The government's brief says Lyman entered only an "enclosed front porch." Appellee's Answer Brief at 4. Lyman testified in his deposition that he was "one step inside the door" of a "very small kind of entryway." I App. 117. Plaintiff testified in her deposition that she found Lyman in her "long living room," III App. 334, apparently near the front door, *id.* at 333.

It is undisputed that after the exchange between plaintiff and Lyman most of the workers went outside, where Lyman explained that they were working contrary to a stop work order and that they risked being cited if they continued. Lyman gave the workers forty minutes to pack up and leave before he began issuing citations. The workers took their tools and left.

A few days following these events, plaintiff alleges that she hurt her back while bending over to pick up a pencil, resulting in severe pain and physical discomfort. She attributes this injury to the stress caused by defendant's unlawful entry into her home to enforce the stop work order.

Apparently in the days following these events construction work at plaintiff's house continued. Within three weeks of the stop work order City officials instituted several civil and criminal court proceedings against plaintiff and her husband, and plaintiff and her husband filed this federal action against a number of defendants.

■ Summary judgment is appropriate only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). We review a district court's summary judgment determination de novo, viewing the record in the light most favorable to the nonmoving party.[5] *See Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991).

## II

■ Plaintiff alleged that Lyman violated her Fourth Amendment rights by entering her home without a warrant in order to enforce the stop work order. The district court found, inter alia, that "even if there had been a technical violation, its consequences were trivial and not of sufficient stature to rise above the *de minimus* [sic] level to

---

4. In a subsequent affidavit submitted with her motion to reconsider, plaintiff stated that she saw Lyman approach her house, and she went immediately to the vestibule. "Upon entering the vestibule, I discovered [Lyman] in my house.... There were no workmen in the front of the house to let Mr. Lyman in." IV App. 624. We do not consider this affidavit on appeal, however, because plaintiff cannot get a second chance to present the facts on a motion to reconsider. Plaintiff's testimony in her deposition is sufficient to establish a genuinely disputed issue of fact concerning whether Lyman made a nonconsensual entry into her home. Thus, the district court erred in finding it is "undisputed Lyman first requested permission to enter the premises." III App. 599.

5. Because plaintiff's notice of appeal indicated that she was appealing from the denial of her motion for reconsideration, made pursuant to Fed.R.Civ.P. 59(e), defendants assert that she cannot challenge the underlying summary judg-

ment on appeal. Although an appeal from the denial of a Fed.R.Civ.P. 60 motion does not itself preserve for review the merits of the underlying judgment, *see, e.g., Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir.1991), *cert. denied*, — U.S. ——, 113 S.Ct. 89, 121 L.Ed.2d 51 (1992), an appeal from the denial of a Rule 59 motion will be sufficient to permit consideration of the merits of the summary judgment, if the appeal is "otherwise proper, the intent to appeal from the final judgment is clear, and the opposing party was not misled or prejudiced." *Grubb v. FDIC*, 868 F.2d 1151, 1154 n. 4 (10th Cir. 1989) (addressing appeals from post-judgment motions such as those for judgment notwithstanding the verdict and for new trial). Because defendants do not allege any procedural problem with the appeal other than that the notice references only the denial of the Rule 59 motion, we consider the merits of plaintiff's challenges to the entry of summary judgment itself.

invoke a constitutionally based remedy in this court." III App. 597.

The Supreme Court has held, in a case involving a city ordinance essentially identical to that before us, that a search of a residence without proper consent requires a valid search warrant. *Camara v. Municipal Court,* 387 U.S. 523, 528–29, 87 S.Ct. 1727, 1730–31, 18 L.Ed.2d 930 (1967). The Court has often used broad language in describing rights under the Fourth Amendment. *See, e.g., id.* at 528, 87 S.Ct. at 1730 ("The basic purpose of this Amendment, as recognized in countless decisions of this Court, is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials."); *Wolf v. Colorado,* 338 U.S. 25, 27, 69 S.Ct. 1359, 1361, 93 L.Ed. 1782 (1949) ("The security of one's privacy against arbitrary intrusion by the police—which is at the core of the Fourth Amendment—is basic to a free society."), *overruled on other grounds, Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Nevertheless, the Fourth Amendment only prohibits unreasonable "searches and seizures." U.S. Const., Amend. IV.

In the instant case, even resolving all conflicts in the testimony in favor of plaintiff, there does not appear to be any search or seizure, thus no violation of the Fourth Amendment. For purposes of this appeal we assume Lyman himself pushed open the door to the premises and stepped into the entryway without any proper consent. Lyman was not on the premises to inspect for a violation of the building code; he and the inspector had already seen what they considered violations of the stop work order, from outside the premises. *See Air Pollution Variance Bd. v. Western Alfalfa Corp.,* 416 U.S. 861, 94 S.Ct. 2114, 40 L.Ed.2d 607 (1974) (where health inspector entered "outside premises" to visually inspect chimney emissions no unreasonable search based on open fields doctrine). It seems clear Lyman did not intend to make any arrest on the premises. *See Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (entry of private residence without a warrant to make arrest is Fourth Amendment violation). Lyman testified that he told plaintiff

he needed to talk to the workmen, I App. 114; *see also id.* 116. Plaintiff testified that Lyman asked her to get the workmen out of the house. III App. 113–14. Lyman admitted that he intended to talk to the workmen, tell them of the stop work order, and if they continued to work "issue citations to each and every workman." I App. 116. To issue a citation, of course, is not to make an arrest. An arrest deprives "a person of his liberty by legal authority." *Black's Law Dictionary* 109–10 (6th ed. 1990); a citation is an order "to appear before a magistrate or judge at a later date," and avoids "having to take the suspect into immediate physical custody," *id.* at 243. Thus, Lyman did not enter plaintiff's home for either a search or a seizure.

We need not in this appeal determine whether an officer's warrantless entry without consent into a private residence can never violate the Fourth Amendment if the official intends no search or seizure. Regardless of Lyman's agreement to talk later to plaintiff's husband and being informed of plaintiff's delicate health, Lyman had a right to approach plaintiff's home to talk to her when he observed from the street workers violating the stop work order. Here plaintiff herself testified that she saw Lyman coming—"I saw somebody walking around to the front door ... I walked down to the living room ... and there he was," I App. 333–34. Other workers employed by plaintiff were on the premises at the time. Lyman's intrusion was minimal, even if he was more than one foot inside the entryway. It is clear he was not there to inspect or to take into physical custody any person or property. In these circumstances, we hold there was no Fourth Amendment violation. *Cf. Wyman v. James,* 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971) (home visit by state welfare worker not a search in Fourth Amendment terms). A different rule would subject to liability every public official who inadvertently, or by invitation of an unauthorized person, steps inside the door of a private residence.

■ Even if we treat Lyman's entry itself as a Fourth Amendment violation, *see United States v. Blue Diamond Coal Co.,* 667 F.2d 510, 517–18 (6th Cir.1981), *cert. denied,* 456 U.S. 1007, 102 S.Ct. 2298, 73 L.Ed.2d 1302

(1983) ("entry ... is itself a search for purposes of the Fourth Amendment," stated in the context of a warrantless entry to seize statutorily required records), we agree with the district court that it was a de minimis violation. *See United States v. Jacobsen*, 466 U.S. 109, 125, 104 S.Ct. 1652, 1662–63, 80 L.Ed.2d 85 (1984) (destruction of small amount of powder during field test for cocaine a de minimis seizure); *Cardwell v. Lewis*, 417 U.S. 583, 587, 591–92, 94 S.Ct. 2464, 2467–68, 2469–70, 41 L.Ed.2d 325 (1974) (examination of automobile tire and taking exterior paint scrapings not unreasonable under the Fourth and Fourteenth Amendments; probable cause existed that vehicle had been used in commission of crime); *United States v. Brignoni–Ponce*, 422 U.S. 873, 880, 95 S.Ct. 2574, 2579–80, 45 L.Ed.2d 607 (1975) (border patrol investigatory stop justified on less than probable cause in part because intrusion "modest"); *United States v. Lyons*, 898 F.2d 210, 211–13 (1st Cir.) (insertion of key into padlock to identify defendant's storage unit not a search), *cert. denied*, 498 U.S. 920, 111 S.Ct. 295, 112 L.Ed.2d 249 (1990); *Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir.1981) (dismissing § 1983 action because any deprivation of parental visitation rights was "so insubstantial in duration and effect" that it did not "rise to a federal constitutional level"). Plaintiff argues that defendant's intrusion cannot be considered de minimis in light of the significant injuries that she alleged occurred as a result of defendant's entry into her home. "The point, [however,] is not that the harm[ ] ... [is] small but that there is no actionable [constitutional] wrong." *Hessel v. O'Hearn*, 977 F.2d 299, 304 (7th Cir.1992).

### III

Plaintiff next contends that defendant Lyman violated her First Amendment freedoms of association and assembly, asserting.

in part that he infringed on her right to assemble workers in her home, her right to assemble wedding guests in her newly renovated home, and her right to associate with the construction workers. Because these claims fail to implicate any interest protected by the First Amendment, the district court did not err in granting defendants summary judgment on these causes of action.

Plaintiff also asserts that Lyman violated her First Amendment freedom to seek redress of grievances from the government. Because plaintiff failed to provide any evidentiary support for these allegations, the district court did not err in granting defendants summary judgment on this claim as well. *See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988) (party moving for summary judgment "has no burden to disprove unsupported claims of his opponent.... [P]laintiffs cannot rely on conclusory allegations; they must produce some specific factual support for their claim of unconstitutional motive.").

### IV

Plaintiff has failed to establish that Lyman violated her First or Fourth Amendment rights; therefore, the City cannot be held liable under § 1983 for those claimed violations. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986) (city cannot be liable under § 1983 if its officer did not cause any constitutional injury).[6]

AFFIRMED.

---

6. We do note that Aspen's ordinance provides as follows: "Upon presentation of his credentials, the chief building inspector, or his duly authorized representative, may enter at any reasonable time any building, structure or premises in the city to perform any duty imposed upon him by this Code." III App. 476. This is identical to the code provision determined to be unconstitutional as applied in *Camara. See* 387 U.S. at 526, 534,

87 S.Ct. at 1729, 1733–34; *see also V–1 Oil Co. v. Wyoming*, 902 F.2d 1482, 1485 (10th Cir.) (court refused to infer warrant requirement where statutory language did not address necessity of warrant), *cert. denied*, 498 U.S. 920, 111 S.Ct. 295, 112 L.Ed.2d 249 (1990). If the City is interpreting this ordinance to permit nonconsensual entries without a warrant for building code inspections—plaintiff contends Lyman made such an

assertion several times—a case might be made for liability on the part of the City if entry is made to inspect for violations or to arrest.