**The EKOTEK SITE PRP COMMITTEE, Plaintiff,**

v.

**Steven M. SELF, et al., Defendants.**

**No. 94–27.**

United States District Court, D. Utah.

June 11, 1996.

Robert M. Pomeroy, Jr., Paul D. Phillips, Steven W. Black, Denise W. Kennedy, Holland & Hart, Denver, CO, Lawrence J. Jensen, Holland & Hart, Salt Lake City, UT, David L. Smiga, Pittsburgh, PA, Andrea M. Hidvegi, Murray, UT, for Ekotek Site PRP Committee, an unincorporated association, plaintiff.

David J. Schwendiman, Daniel D. Price, U.S. Attorneys Office, Alan David Greenberg, U.S. Department of Justice, Environmental Defense, Denver, CO, David L. Dain, U.S. Department of Justice, Environmental Enforcement Section, Washington, DC, for the U.S.

Derek J. Lobo, Law Offices of Radmila A. Fulton, San Diego, CA, for Steven M. Self, defendant.

Raymond Scott Berry, Green & Berry, Salt Lake City, UT, Douglas J. Parry, Parry, Murry & Ward, Salt Lake City, UT, for A.J. Dean Concrete et al., defendants.

Michele Mattsson, Salt Lake City, UT, for All Western Oil Company, defendant.

James A. Boevers, Prince Yeats & Geldzahler, Salt Lake City, UT, Anne D. Weber, Denver, CO, for American Barrel & Cooperage Company, Inc., et al., defendants.

Barbara K. Berrett, Richards Brandt Miller & Nelson, Salt Lake City, UT, for Andy's Lube Center, defendant.

Alan D. Frandsen, Salt Lake City, UT, for Baxter's Auto Haus, et al., defendants.

David P. Kimball, III, Cameron T. Chandler, Gallagher & Kennedy, Phoenix, AZ, for Bud's Oil Service, defendant.

Terry L. Cathcart, Bountiful, UT, for Charles Rockwood, defendant.

Phillip B. Shell, Day Shell & Liljenquist, Murray, UT, for COMTOW, defendant.

John W. Call, Nygaard Coke Vincent, Salt Lake City, UT, John J. Gosbee, Mandan, ND, for Econ Inc., defendant.

Gary Firestone, Stephen F. Crew, O'Donnell, Ramis, Crew, Corrigan & Bachrach, Portland, OR, Douglas J. Parry, Parry, Murry & Ward, Salt Lake City, UT, for Fuel Processors, Inc., defendant.

Phil E. DeAngeli, Cosho, Humphrey, Greener & Welsh P.A., Boise, ID, James A. McIntyre, McIntyre Golden Horgas & Diaz, Murray, UT, Max A. Eiden, Jones Gledhill & Eiden, Boise, ID, for Grease Monkey, et al., defendants.

Byron L. Stubbs, Salt Lake City, UT, for J.C. Bangerter & Sons, Inc., defendant.

Richard K. Chamberlain, Olsen & Chamberlain, Richfield, UT, for Jays Diesel Service, defendant.

David C. McElhinney, Reno, NV, Douglas J. Parry, Parry, Murry & Ward, Salt Lake City, UT, for Lost Dutchman Construction Inc., defendant.

Joy L. Clegg, Snow, Christensen & Martineau, Salt Lake City, UT, Douglas J. Parry, Bret F. Randall, Parry, Murry & Ward, Salt Lake City, UT, for Lynn Harmon Texaco, et al., defendants.

Brent Morgan, Pocatello, ID, Douglas J. Parry, Parry, Murry & Ward, Salt Lake City, UT, for Morgan's Amoco, defendant.

Richard D. Parry, Boise, ID, William G. Dryden, Elam & Burke, P.A., Boise, ID, for Morrison Knudsen Corp., defendant.

Jean R. Babilis, Jean Robert Babilis & Associates, Ogden, UT, for Mort's Transmission, defendant.

Douglas J. Parry, Parry, Murry & Ward, Salt Lake City, UT, Carol L. Lear, Leboeuf Lamb Greene & MacRae, L.L.P., Hartford, CT, for Milford Fastening Systems, defendant.

Joy L. Clegg, Snow, Christensen & Martineau, Salt Lake City, UT, Allan D. Brock, Carter, Brock & Hinman, P.A., Boise, ID, Douglas J. Parry, Bret F. Randall, Parry Murry & Ward, Salt Lake City, UT, for liaison defendants.

H. Bryce Wade, Salt Lake City, UT, for Valley Ford Sales, defendant.

Randall N. Skanchy, Bruce E. Wycoff, Jones Waldo Holbrook & McDonough, Salt Lake City, UT, for Roto Rooter Sewer Service #1, defendant.

Alan C. Bradshaw, Holme Roberts & Owen LLC, Salt Lake City, UT, for Lavar Tate, defendant.

### *MEMORANDUM AND ORDER*

LUNGSTRUM, District Judge.

Plaintiff The Ekotek Site PRP Committee (plaintiff) brings this action seeking contribution for the expense it incurred due to the clean up of the Ekotek site. On February 20, 1996, the court held a hearing on plaintiff's motion for partial summary judgment on whether or not each defendant is a responsible party under section 9607(a) of the Comprehensive Environmental Response, Compensation & Liability Act (CERCLA), 42 U.S.C. § 9601 *et seq.* At the hearing, the Liaison Defendants challenged the procedural approach taken and the conclusions reached by Judge Patrick F. Kelly in his March 24, 1995 Memorandum and Order.[1] *Ekotek Site PRP Comm. v. Self,* 881 F.Supp. 1516 (D.Utah 1995). Judge Kelly's prior order formed an integral part of plaintiff's theory why it was entitled to partial summary judgment and, if it were set aside, plaintiff's argument on the partial summary judgment motion would necessarily fall. Relying on the law of the case doctrine, the court upheld Judge Kelly's order and granted plaintiff's motion but invited defendants to submit a motion to alter or amend if they desired to attempt to show that Judge Kelly has been clearly erroneous. February 29, 1996 Memorandum and Order.

Accepting the invitation, the Liaison Defendants filed a motion to reconsider findings on summary judgment (Doc. # 682), which is presently before the court. In their motion, the Liaison Defendants contend that Judge Kelly erred by assigning to defendants the burden of proving that the oil they shipped to Ekotek fell within the petroleum exclusion

---

1. After Judge Kelly took senior status, the case was reassigned to the undersigned.

and by granting plaintiff summary judgment that used motor oil sent to the Ekotek site constitutes a hazardous substance under section 9601(14) of CERCLA. After careful consideration, the court finds that neither of Judge Kelly's rulings was clearly erroneous. The Liaison Defendants' motion to reconsider is therefore denied.

## I. *Legal Standards*

■ Whether to grant or deny a motion for reconsideration is committed to the court's discretion. *Hancock v. City of Oklahoma City,* 857 F.2d 1394, 1395 (10th Cir. 1988). In exercising that discretion, courts in general have recognized three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice. *See Marx v. Schnuck Markets, Inc.,* 869 F.Supp. 895, 897 (D.Kan.1994) (citations omitted); *see also Anderson v. United Auto Workers,* 738 F.Supp. 441, 442 (D.Kan. 1990) (motion to reconsider appropriate when the court has obviously misapprehended a party's position, the facts, or the applicable law, or when a party introduces new evidence that could not have been obtained through the exercise of due diligence).

■ As noted previously, the court's entry of summary judgment rested on the law of the case doctrine, which provides that "[w]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. This principle applies to all issues previously decided, either explicitly or by necessary implication." *United States v. Rice,* 76 F.3d 394, 394 (10th Cir.1996) (citations omitted). "The law of the case must be followed unless the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice." *Cascade Energy & Metals Corp. v. Banks,* 85 F.3d 640, 640 (10th Cir.1996). Had Judge Kelly misplaced the burden of proof and/or improperly drawn inferences against defendants as the non-moving parties when entering summary judgment on behalf of plaintiff, his conclusions would be clearly erroneous and departure from the law of the case and reconsideration of the previous ruling would be warranted. As shown below, however, Judge Kelly correctly placed the burden of proof and he did not need to draw inferences against defendants in order to grant plaintiff summary judgment.

## II. *Discussion*

A. *Defendants have the burden of proving that the used motor oil each shipped to Ekotek falls within the petroleum exclusion.*

■ The so called petroleum exclusion derives from CERCLA's definition of a hazardous substance. Title 42 U.S.C. § 9601(14) defines hazardous substance to include a broad range of pollutants and chemicals but excludes from the definition:

> petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance under subparagraphs (A) through (F) of this paragraph, and the term does not include natural gas, natural gas liquids, liquified natural gas, or synthetic gas usable for fuel (or mixtures of natural gas and such synthetic gas).

Judge Kelly concluded that the petroleum exclusion did not cover used motor oil containing nonindigenous hazardous substances or indigenous hazardous substances in concentration levels higher than that existing in unused petroleum product. *Ekotek Site PRP Comm.,* 881 F.Supp. at 1524. Neither party disputes this conclusion. Rather, they dispute who has the burden of proving whether or not the used motor oil shipped to Ekotek fell within the petroleum exclusion.

The petroleum exclusion cannot be characterized as an affirmative defense on which the party asserting it would traditionally have the burden of proof. Section 9607(b), not section 9601(14), lists the affirmative defenses available under CERCLA. *See County Line Investment Co. v. Tinney,* 933 F.2d 1508, 1518 n. 15 (10th Cir.1991). Carved out of the definition of hazardous substance, the petroleum exclusion is properly characterized

as a statutory exception. Thus, the question becomes who has the burden of proof with regard to a statutory exception.

Although no case at the time had specifically discussed burden of proof in the context of the petroleum exclusion, this court believes Judge Kelly correctly allocated the burden of proof to defendants. In *United States v. First City Nat'l Bank*, 386 U.S. 361, 366, 87 S.Ct. 1088, 1092, 18 L.Ed.2d 151 (1967), the Supreme Court stated the general rule that the party claiming the benefits of an exception to the prohibition of a statute has the burden of proving it meets the exception. In *First City*, the court examined the Bank Merger Act of 1966, which, although generally prohibiting bank mergers that violated certain antitrust laws, included a statutory exception by which permitting otherwise impermissible mergers in which the anticompetitive effects were clearly outweighed by the probable effect of the transaction in meeting the convenience and needs of the community to be served. 12 U.S.C. § 1828(c)(5)(B). The court assigned to the merging banks the burden of proving their merger fell within the statutory exception. Like in *First City*, the conduct to which the exception arguably applies in this case is conduct that otherwise falls within the statute,[2] but which is not implicated by the statute for policy reasons.[3] These similarities indicate that application of the *First City* rule is appropriate.

Moreover, placing the burden of proof on defendants is consistent with how courts have treated another, analogous statutory exception to CERCLA. In *United States v. Fleet Factors Corp.*, 901 F.2d 1550, 1555 (11th Cir.1990), *cert. denied*, 498 U.S. 1046, 111 S.Ct. 752, 112 L.Ed.2d 772 (1991), the court examined 42 U.S.C. § 9601(20)(A), which excludes from the definition of "owner or operator" any "person, who, without participating in the management of a . . . facility." The Eleventh Circuit, citing *First City*, held that the party seeking to take advantage of the exception has the burden of proving it falls within the exception's scope. *Id.*

Finally, since Judge Kelly's ruling, at least one court has held that the party invoking the petroleum exclusion has the burden of proving its entitlement to the exception. *Dartron Corp. v. Uniroyal Chem. Co.*, 917 F.Supp. 1173, 1184 (N.D.Ohio 1996). The *Dartron* court reached its conclusion in a different factual context. Nevertheless, the court directly addressed the legal question of burden of proof for the petroleum exclusion and the court's conclusion is an additional indication that Judge Kelly's decision was not clear error.[4]

The cases cited by the Liaison Defendants are not to the contrary; they neither discuss burden of proof nor by inference suggest an opposite result from that reached by Judge Kelly. To illustrate, the Liaison Defendants cite *Wilshire Westwood Assocs. v. Atlantic Richfield Corp.*, 881 F.2d 801 (9th Cir.1989), yet the *Wilshire* court addressed only whether the scope of the petroleum exclusion reached refined gasoline and its additives. *Id.* at 803. Similarly, the scope of the petroleum exclusion was the sole question decided by the court in *Southern Pacific Transportation Co. v. California*, 790 F.Supp. 983 (C.D.Cal.1991). Finally, the courts in *Bunger v. Hartman*, 797 F.Supp. 968, (S.D.Fla. 1992), and *Niecko v. Emro Marketing Co.*, 769 F.Supp. 973, 982 (E.D.Mich.1991), *aff'd*, 973 F.2d 1296 (1992), concluded that the contamination derived from hazardous substances indigenous to petroleum products is unquestionably within the petroleum exclusion. Thus, the cases cited by the Liaison Defendants relate to the scope and effect of

---

2. Compare anticompetitive bank mergers under the Bank Merger Act with arranging for the disposal of hazardous substances under CERCLA.

3. Compare the policy of advancing the convenience and needs of the community under the Bank Merger Act with the policy of excluding oil spills from the ambit of CERCLA's liability net. *See Wilshire Westwood Assocs. v. Atlantic Richfield Corp.*, 881 F.2d 801, 806 (9th Cir.1989);

*United States v. Amtreco, Inc.*, 846 F.Supp. 1578, 1584 (M.D.Ga.1994).

4. Significantly, although *Dartron* occupies a prominent position in plaintiff's response, the Liaison Defendants nowhere address the case in their reply. Thus, the Liaison Defendants' statement that plaintiff's "own cases demonstrate that [ ] plaintiff has the burden of proof on the petroleum exclusion" is simply erroneous.

**1324**

the petroleum exclusion, not the burden of proof.[5]

In summary, Judge Kelly correctly held that defendants have the burden of proving the petroleum product each shipped to Ekotek falls within the petroleum exclusion. Because defendants have the burden of proof, they cannot cite the petroleum exclusion as a basis to deny plaintiff summary judgment unless they can point to evidence from which a reasonable trier of fact could infer that the used motor oil each defendant shipped to Ekotek did not contain nonindigenous hazardous substances or indigenous hazardous substances in concentrations higher than those in unused motor oil. *Cf. Chatham Steel Corp. v. Brown*, 858 F.Supp. 1130, 1154 (N.D.Fla.1994) (recognizing that a party with the burden of proof on the analogous basis of an affirmative defense is "obligated to bring forward evidence on summary judgment supporting this defense if it seeks to fend off Plaintiffs' motion"). As noted below, the Liaison Defendants have failed to meet this burden.

B. *Used motor oil sent to the Ekotek site constitutes a hazardous substance under section 9601(14) of CERCLA.*

As noted previously, Judge Kelly granted plaintiff summary judgment that the used motor oil sent to the Ekotek site constitutes a hazardous substance under section 9601(14) of CERCLA. The Liaison Defendants challenge this order, arguing, first, that it is incompatible with the Environmental Protection Agency's (EPA) decision not to list used oil as hazardous and, second, that the eviden-

tiary record does not support the order. Neither basis warrants reconsideration.

■ In 1992, the EPA decided not to "list" used oil as a "hazardous waste" under the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6901 et seq. 57 Fed. Reg. 21524 (May 20, 1992). The EPA did not, however, determine that used oil never meets the definition of hazardous waste. *See* 57 Fed.Reg. at 21528. Title 40 C.F.R. § 261.3 defines hazardous waste to include, among other things, a solid waste that meets certain criteria and has been listed or exhibits certain characteristics of hazardous waste. The ability to regulate used oil exhibiting hazardous characteristics without categorically listing all used oil as hazardous waste was a primary factor behind the EPA's 1992 decision. *See* 57 Fed.Reg. at 21528–31. The Liaison Defendants have made no showing that the used motor oil they sent to Ekotek had no hazardous characteristics. Thus, the EPA's decision not to categorically list used oil as a hazardous substance is not incompatible with Judge Kelly's ruling.

■ As to the Liaison Defendants' second argument, this court believes the evidentiary record supports Judge Kelly's order. In its motion for summary judgment, plaintiff relied on three experts: Sara Black, Richard Scott, and Dr. Leigh Short. Through these experts, plaintiff introduced evidence of the following points:

1. Hazardous substances found at the Ekotek site are also found in "used motor oil both generally and at the Ekotek site specifically."[6] Black aff. ¶ 11.

dichlorobenzene, 1,1 dichloroethane, 1,2 dichloroethane, CIS–1,2 dichloroethane, 1,2 dichloropropane, 1–2,4 trichlorobenzene, 1,1 dichloroethylene, 1,2 dichlorobenzene, methylene chloride, chloroform, chromium, chrysene, copper, lead, naphthalene, nickel, phenol, 2–4 dimethylphenol, 2,4 dinitro-phenol, methylphenol, 4 chloro–3 methylphenol, aroclor 1232, aroclor 1254, aroclor 1260, pyrene, toluene, xylene, and zinc. Black aff. Ex. C.

More specifically, Ms. Black found the following substances in the used motor oil tested in one or more of the tanks on the Ekotek site: benzene, cadmium, 1,1,1 trichloroethane, tetrachloroethane, 1,1 dichloroethane, methylene chloride, chromium, copper, lead, nickel, toluene, xylene, zinc, cobalt, ethylbenzene, acetone, 2–butanone,

5. The Liaison Defendants' are not alone in citing off point authority. For example, plaintiff's citation in its summary judgment papers to *Artes–Roy v. Aspen*, 31 F.3d 958, 963 (10th Cir.1994) and *D.C.A. Dev. Corp. v. Ogden City Mun. Corp.*, 965 F.2d 827, 830 (10th Cir.1992) as authority to disregard Mr. Thatcher's second affidavit is equally specious.

6. Ms. Black stated that the following hazardous substances occur in used motor oil and were found at the Ekotek site: arsenic, benzene, benzo(a)anthracene, benzo(a)pyrene, cadmium, dichlorodifluoromethane, 1,1,1 trichloroethane, 1,1,2 trichloroethane, trichloroethylene, tetrachloroethylene, tetrachloroethane, chlorobenzene, chloroethanal, 1,3 dichlorobenzene, 1,4

2. "[C]ertain hazardous substances, which have been detected at Ekotek and in used oil, are not present in crude oil or refined petroleum,[7] or are found in much lower concentrations in crude oil or refined petroleum." Black aff. ¶ 14; see also Scott aff. ¶ 21 and footnote 3 below.

3. Used motor oil in general contains hazardous substances absent from unused oil.[8]

4. Used motor oil in general contains hazardous substances which can be found in unused oil but only in lower concentrations.[9]

5. Motor oil becomes contaminated through use by one or more of the following mechanisms: chemical reactions during the combustion process; absorption of fuel combustion products, blow-by gasoline, coolant, etc.; and wear of engine components. Scott aff. ¶ 8; Short aff. ¶ 14. Oil can also be contaminated as a result of engine repairs, improper collection activities or storage, the cleaning of engine parts, or during transportation. Scott aff. ¶ 9; Short aff. ¶ 22.

Without question, this evidence satisfies plaintiff's initial summary judgment burden. A reasonable trier of fact examining this evidence could only conclude that used motor oil in general and the used motor oil defendants shipped to the Ekotek site contains hazardous substances that are either nonindigenous or inherent only in lower concentrations in unused motor oil. Thus, the burden shifts to defendants to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

The Liaison Defendants initially attack the evidence regarding the Ekotek site by claiming that Ms. Black did not state that the substances found in the used motor oil tested at the Ekotek site were found at concentrations higher than those found in unused motor oil. In paragraph 14 of her affidavit, however, Ms. Black did say that "certain hazardous substances, which have been detected at Ekotek and in used oil ... are found in much lower concentrations in crude oil or refined petroleum." Even viewing Ms. Black's affidavit in the light most favorable to defendants, no reasonable trier of fact could conclude that Ms. Black was not speaking of the used oil tested at Ekotek. The term "used oil" could be construed to encompass all used oil including that tested at Ekotek but not to mean all used oil except

---

and 4-methyl-2-pentanone. Black aff. ¶ 12; 2d Black aff. ¶ 9. Evidence regarding the metals on this list comes from the second affidavit of Sara Black, which was filed with plaintiff's response to the present motion. Although this evidence was not before Judge Kelly, defendants have not filed a motion to strike or otherwise objected to the second affidavit. Accordingly and because the evidence in the second affidavit is further evidence that Judge Kelly's order is not clear error, the court has considered the affidavit.

7. According to Dr. Short, the following "hazardous substances found at the Ekotek site are typically found in used motor oil but do not occur naturally in crude oil or refined petroleum": polychlorinated biphenyls (PCBs) such as aroclor 1232, aroclor 1254 and aroclor 1260, chlorobenzene, chloroethane, chloroform, 1,2-dichlorobenzene, dichlorodifluoromethane, tetrachloroethylene, 1,1,1-trichloroethylene, trichloroethylene and methylene chloride.

8. According to Mr. Scott, the following hazardous substances are not present in crude oil or refined petroleum: PCBs such as aroclor 1232, aroclor 1254 and aroclor 1260, chlorobenzene, chloroform, 1,2-dichlorobenzene, dichlorodifluo-romethane, tetrachloroethylene, 1,1,1-trichloroethane, and trichloroethylene. Scott aff. ¶ 7.

Ms. Black notes that "chlorinated solvents—such as TCE, TCA and methylene chloride—are not naturally present in crude oil or refined petroleum." Black aff. ¶ 14.

Dr. Short echoes this conclusion. Short aff. ¶ 11.b. Dr. Short then hedges, however, and states that chlorinated solvents, cadmium, arsenic and chromium are present in used motor oils but either nonexistent or unlikely in virgin oils. Without qualification, Dr. Short asserts that PCBs, which are present in 5–10% of used motor oil, are not in unused motor oil. Short aff. ¶ 19.

9. In Mr. Scott's opinion, those hazardous substances are the following: arsenic, benzene, benzo(a)anthracene, benzo(a)pyrene, chromium, chrysene, copper, ethylbenzene, lead, naphthalene, phenol, pyrene, toluene, xylene, and zinc. Scott aff. ¶ 7.

Dr. Short states that the concentration of metals and benzo(a)pyrene is much higher in used motor oil than in virgin oil. Short aff. ¶ 11.a. Elaborating, Dr. Short asserts that "new PNA compounds are produced during oil use," resulting in dramatically elevated levels of benzo(a)pyrene in used motor oil. Short aff. ¶ 21.

for that tested at Ekotek. Thus, the Liaison Defendants initial argument is without merit.

The Liaison Defendants next claim that Judge Kelly's memorandum recited a laundry list of chemicals that were not found in the used oil tested at the Ekotek site. A review of the chemicals listed in the second paragraph of footnote six, however, reveals that each of the chemicals listed by Judge Kelly was found in the oil tested except for benzo(a)pyrene, which was found elsewhere at the site. Moreover, the Liaison Defendants seek reconsideration of Judge Kelly's order, not the list of chemicals he cited in his memorandum. Judge Kelly's order would not be "clear error" even if his entire list of chemicals were unsubstantiated, provided other evidence in the record supported the order being challenged. The record of this case includes evidence that hazardous substances not specifically mentioned by Judge Kelly, e.g. benzene, 1,1 dichloroethane, methylene chloride, chromium, copper, nickel, xylene, and zinc, were found in the used motor oil at Ekotek. Thus, even if the Liaison Defendants' challenge to Judge Kelly's list had been wholly successful, it would be inadequate to raise a question of fact regarding whether or not the evidence from the Ekotek site justified Judge Kelly's order.

Finally, the Liaison Defendants attempt to dispute the conclusions reached by plaintiff's experts regarding certain chemicals found in used motor oil, both generally and specifically at Ekotek. As the basis for their argument, the Liaison Defendants cite their expert, Theodore Thatcher, and selected portions of plaintiff's experts' affidavits and accompanying materials. These sources, however, do not raise questions of fact on the relevant issues.

The following statements made by Mr. Thatcher most directly address whether or not the used motor oil shipped to Ekotek was a hazardous substance under CERCLA:

1. "Used motor oil does not contain hazardous substances which are not found in refined petroleum products or crude oil." 2d Thatcher aff. ¶ 5.
2. "Because of improper disposal practices, used oil tested on a national level sometimes contains chlorinated solvents, PCBs, pesticides, and a variety of non-indigenous substances, such as chlorobenzene, chloroform, 1,2 dichlorobenzene, dichlorodiflouromethane, tetrachloroethylene, 1,1,1 trichloroethane and trichloroethylene. As with chlorinated solvents, PCBs, and pesticides, used motor oil does not contain these substances unless it has come in contact with them from sources separate and independent from the used motor oil after it is removed from the engine." 2d Thatcher aff. ¶ 6.
3. "It is highly unlikely that the Liaison Defendants' used motor oil was contaminated by engine wear materials because automotive and diesel engines generally do not contain parts made from CERCLA hazardous substances which would come in contact with lube oil." 2d Thatcher aff. ¶ 7.
4. "Used motor oils are not necessarily contaminated with CERCLA hazardous substances." 2d Thatcher aff. ¶ 3.
5. "The levels of potentially hazardous substances which may be found in used motor oil are not static or consistent. The levels vary significantly due to a variety of factors...." 2d Thatcher aff. ¶ 4.
6. "[The indigenous] constituents of petroleum may typically include metals (including arsenic, barium, cadmium, chromium, lead and zinc), benzene, toluene, ethylbenzenes, xylenes, naphthalene and poly nuclear aromatic compounds including benzo(a)pyrene, benzo(a)anthracene and crysene." 2d Thatcher aff. ¶ 4.

Assuming, as the court must, that Mr. Thatcher's statements are true, they do not create questions of fact. Although statement 1 seems broad, it is qualified by statement 2. When combined, statements 1 and 2 can only be read to mean that chlorobenzene, chloroform, 1,2 dichlorobenzene, dichlorodiflouromethane, tetrachloroethylene, 1,1,1 trichloroethane, trichloroethylene, chlorinated solvents in general, PCBs, and pesticides can be found in used motor oil but their presence is due to reasons other than the internal combustion processes of an engine. As noted in footnotes 6–8, some of these hazardous substances were found at the Ekotek site, were in the oil tested at the Eko-

tek site, and are in used oil generally. As a result, statements 1 and 2 do not controvert plaintiff's position that at least certain nonindigenous hazardous substances existed in the used oil and elsewhere at the Ekotek site.

Statements 2 and 3 deal with methods of contamination, a relevant issue due to the petroleum exclusion. The EPA has stated that "[t]he mixing of two or more excluded petroleum substances, such as blending of fuels, would not be considered contamination by use, and the mixture would thus be an excluded substance." "Scope of the Petroleum Exclusion under Sections 101(14) and 104(a)(2)" EPA General Counsel (July 31, 1987) at 6 n. 3. Dr. Short noted that elevated levels of benzo(a)pyrene and benzo(a)anthracene in used motor oil could result from the interface between oil and gasoline or diesel fuel. Short aff. ¶ 18. Arguably, such mixtures would fall within the petroleum exclusion. The court need not decide the question because the Liaison Defendants do not dispute that certain methods of contamination, including chemical reactions during the combustion process and improper collection activities, can produce a product that does not fall within the petroleum exclusion.[10] Thus, Mr. Thatcher's statements do not support an argument that even if nonindigenous hazardous substances or elevated levels of indigenous contaminants exist in used motor oil, the oil still falls within the petroleum exclusion.

Mr. Thatcher's general statement that used motor oils are not necessarily contaminated with CERCLA hazardous substances, statement 4, does not controvert plaintiff's evidence that defendants' used motor oil was. For example, Ms. Black found 1,1,1 trichloroethane in the used motor oil tested at Ekotek. Black aff. ¶ 12. According to Dr. Short and Mr. Thatcher, that substance is not inherent in unused motor oil. Short aff. ¶ 24; 2d Thatcher aff. ¶ 6.

As for statements 5 and 6, even if the level of indigenous hazardous substances in unused motor oil varies, that does not controvert plaintiff's evidence that used motor oil in general and at the Ekotek site had elevated

levels of those substances. Similarly, listing some of the hazardous substances inherent in unused motor oil does not address whether those contaminants exist in higher concentrations in used motor oil than in unused motor oil.

In addition to citing Mr. Thatcher, the Liaison Defendants rely on portions of the evidence plaintiff submitted regarding certain hazardous substances: benzo(a)pyrene, toluene, lead and other heavy metals, chlorinated solvents and cadmium. The Liaison Defendants' arguments generally contend that the evidence shows that these chemicals do not appear in all used motor oil or do not exist in higher concentrations in all used motor oil. Even if the Liaison Defendants are correct, however, they misapprehend their burden of proof. Plaintiff's have produced evidence that each of these substances as well as other hazardous substances exist in the used motor oil shipped to the Ekotek site and that certain hazardous substances are nonindigenous or are present in elevated concentrations. Defendants therefore have the obligation to produce evidence from which a reasonable trier of fact could infer to the contrary. Reliance on general information regarding a few, select hazardous substances does not satisfy that obligation. Judge Kelly's entry of summary judgment in favor of plaintiff was therefore appropriate.

### III. *Order*

**IT IS THEREFORE ORDERED BY THE COURT** that the Liaison Defendants' motion to reconsider findings on summary judgment (Doc. # 682) is denied.

**IT IS SO ORDERED.**

---

**10.** Although the court does not decide the question, it does not rely on evidence regarding ben-

zo(a)pyrene or benzo(a)anthracene to deny reconsideration of Judge Kelly's order.