Don A. COSE and Darlene A. Cose, Plaintiffs–Appellants,

v.

GETTY OIL COMPANY, a Delaware Corporation, et al., Defendants,

and

Texaco, Inc., a Delaware Corporation; Four Star Oil and Gas Company, Defendants–Appellees.

No. 91–16575.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 13, 1993.

Decided Aug. 11, 1993.

As Amended Oct. 1, 1993.

Robert Mehlhaff, Souza, Coats, McInnis & Mehlhaff, Tracy, CA, for plaintiffs-appellants.

Ward L. Benshoff, McClintock, Weston, Benshoof, Rochefort, Rubalcava & MacCuish, Los Angeles, CA, for defendants-appellees, Texaco, Inc. and Four Star Oil and Gas Co.

Before: SCHROEDER, PREGERSON, and D.W. NELSON, Circuit Judges.

PREGERSON, Circuit Judge:

Don A. Cose and Darlene A. Cose ("the Coses") appeal the district court's grant of summary judgment dismissing their Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., action against the Getty Oil Company ("Getty Oil"), et al. The CERCLA action sought recovery for response costs needed to clean subsurface crude oil tank bottom waste discovered on property purchased from Getty Oil. The tank bottom waste contains substances deemed hazardous under CERCLA. The district court based its dismissal on its conclusion that crude oil tank bottoms fall within CERCLA's petroleum exclusion. We disagree and therefore reverse.

## BACKGROUND

Getty Oil produced crude oil from wells in the Tafts–Fellow area of Kern County, California. The oil was transported by Getty to its Avon refinery in Martinez, California via a pipeline route and pumping stations located at twelve-mile intervals. The crude oil was stored at the pumping stations in tanks and heated to reduce its viscosity. The oil was then pumped farther along the pipeline.

When crude oil is stored in tanks, suspended sedimentary solids in the crude oil settle to the bottom. Because water is heavier than oil, it separates from the oil and also collects at the bottom of the tank. The bottom layer of the tank is known as basic sediment and water, or "crude oil tank bottoms." Crude oil tank bottoms are typically drained from crude oil storage facilities and disposed of in nearby sumps.

One pumping station used by Getty Oil was located in Tracy, California. The sump facility for the Tracy pumping station was situated on nearby property called the "Gravel Pit." About once a week, the crude oil tank bottoms from the Tracy pumping station storage tanks were drained and dumped in the Gravel Pit. Getty Oil closed the Tracy pumping station by 1968, when a new pipeline system on a different route rendered the Tracy station obsolete.

In May 1974, Don A. Cose purchased the Gravel Pit, a 40–acre parcel of undeveloped land, from Getty Oil[1] for $50,000. The complaint alleges that when Cose purchased the property, a layer of topsoil concealed the crude oil tank bottom materials dumped on the property and hence, a reasonable inspection of the premises did not disclose the dumped materials. The Coses contend that

---

1. Getty Oil was the successor in interest to Tidewater Oil Company, formerly Tidewater Associated Oil Company. Texaco Inc. acquired all of the stock of Getty Oil in the mid–1980's. Getty subsequently changed its name to Four Star Oil and Gas Company. Accordingly, the Coses bring this action against Getty Oil, Texaco Inc., and the Four Star Oil and Gas Company.

they discovered the presence of a "subsurface asphalt or tar-like material" on the property in November 1987 when they undertook to develop the property for housing. They then commissioned Kleinfelder, Inc., a soils and environmental engineering firm, to investigate the property further. The investigation included a preliminary assessment of the chemical composition of the oily waste found on the property. Of particular concern, the investigation revealed a "high concentration" (10.5 ppm) of Chrysene, a known carcinogen. Kleinfelder Report, at 4. The concentration level of Chrysene in crude oil in the region was determined to be 28.0 ppm. The Kleinfelder report recommended that "the waste, which contains concentrations of [petroleum hydrocarbons] that are considered hazardous by many regulatory agencies, be removed or stabilized prior to development of the site." Kleinfelder Report, at 1.

Based on the results of the Kleinfelder investigation, the Coses filed suit in federal district court under CERCLA to recover "response costs" needed to clean up the Gravel Pit property.[2]  42 U.S.C. § 9607(a)(3).

In response, Getty Oil moved for summary judgment. In its summary judgment motion, Getty Oil contended that the Coses could not prove that Getty Oil had disposed of a "hazardous substance" on the Gravel Pit property because CERCLA excludes from its "hazardous substances" definition crude oil tank bottoms.

The district court agreed and granted summary judgment in favor of Getty Oil. This appeal followed.

## ANALYSIS

■ We review de novo the district court's grant of summary judgment. *Louisiana–Pacific Corp. v. Asarco, Inc.,* 909 F.2d 1260, 1262 (9th Cir.1990). Likewise, we review de novo the district court's interpretation of CERCLA. *Wilshire Westwood Assoc. v. Atlantic Richfield,* 881 F.2d 801, 803 (9th Cir.1989).

■ We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Tzung v. State Farm Fire and Casualty Co.,* 873 F.2d 1338, 1339–40 (9th Cir.1989). The court must enter summary judgment, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

On appeal, the Coses do not allege that summary judgment was improper due to a genuine issue of material fact. Rather, this appeal rests solely on a claim that the district court incorrectly applied the relevant substantive law. Hence, we must review the relevant substantive law underlying CERCLA claims in this context.

Congress enacted CERCLA in 1980 "to facilitate the cleanup of leaking hazardous waste disposal sites." *Ascon Properties, Inc. v. Mobil Oil Co.,* 866 F.2d 1149, 1152 (9th Cir.1989) (citing *Exxon Corp. v. Hunt,* 475 U.S. 355, 358–60, 106 S.Ct. 1103, 1107–08, 89 L.Ed.2d 364 (1986)). To further this purpose, Congress created a private cause of action for certain "response costs" against various types of persons who contributed to hazardous waste dumping at a specific site. *Ascon Properties,* 866 F.2d at 1152 (citing 42 U.S.C. § 9607(a)).

■ To state a prima facie case under CERCLA, 42 U.S.C. § 9607(a), a plaintiff must allege that: (1) the waste disposal site is a "facility" within the meaning of 42 U.S.C. § 9601(9); (2) a "release" or "threatened release" of a "hazardous substance" from the facility has occurred, *id.* § 9607(a)(4); (3) such release or "threatened release" will require the expenditure of response costs that are "consistent with the national contingency

**2.** The Coses also brought pendent state claims seeking damages for public and private nuisance, negligence, strict liability based on a defective product, statutory tort, and fraud.

plan," *id.* §§ 9607(a)(4) and (a)(4)(B); and, (4) the defendant falls within one of four classes of persons subject to CERCLA's liability provisions. *Id.* at §§ 9607(a)(1)–(4); *Ascon Properties,* 866 F.2d at 1152.

■ Here, the district court granted summary judgment in favor of the defendants because it concluded as a matter of law that crude oil tank bottoms are not "hazardous substances" under CERCLA. Hence, the court held that the Coses could not establish a prima facie case under CERCLA because they could not show that Getty Oil had released a "hazardous substance."

CERCLA defines "hazardous substance" by reference to substances listed under various other federal statutes.[3] *See* 40 C.F.R. § 302.4 (comprehensive listing of CERCLA hazardous substances). But § 9601(14) of CERCLA *expressly excludes* from its "hazardous substance" definition "petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance under subparagraphs (A) through (F) of [§ 9601(14) ]...."

■ Both the EPA and our court interpret the petroleum exclusion to apply to petroleum products, even if a specifically listed hazardous substance, such as Chrysene, is indigenous to such products. *See* EPA Memorandum, July 31, 1987; *Wilshire Westwood Assoc.,* 881 F.2d 801 (leaded gasoline falls within the petroleum exclusion despite hazardous indigenous components and additives). In *Wilshire,* we analyzed the plain meaning of CERCLA, its post-enactment legislative history, and the EPA's interpretation of the statute to reach the following conclusion:

[T]he petroleum exclusion in CERCLA does apply to unrefined and refined gasoline *even though certain of its indigenous* *components and certain additives during the refining process have themselves been designated as hazardous substances within the meaning of CERCLA.*

881 F.2d at 810 (emphasis added).

The EPA has followed this interpretation through its rules and memoranda. As the EPA explained in a Final Rule published April 4, 1985,

EPA interprets the petroleum exclusion to apply to materials such as crude oil, petroleum feedstocks, and refined petroleum products, *even if a specifically listed or designated hazardous substance is present* in such products. However, EPA does not consider materials such as *waste oil to which listed CERCLA substances have been added* to be within the petroleum exclusion.

50 Fed.Reg. 13,460 (April 4, 1985) (emphasis added). *See also Mid Valley Bank v. North Valley Bank,* 764 F.Supp. 1377, 1384 (E.D.Cal.1991) (waste oil containing CERCLA hazardous substances does not fall under CERCLA's petroleum exclusion); *United States v. Western Processing Co.,* 761 F.Supp. 713, 722 (W.D.Wash.1991) (tank bottom sludge *does not* fall within the petroleum exclusion in part because the sludge at issue contained contaminants that were not indigenous to the crude oil itself).

■ If a specifically listed hazardous substance is indigenous to petroleum and is present as a result of the release of petroleum, such substance will fall within the petroleum exclusion *unless* it is present at a concentration level that exceeds the concentration level that naturally occurs in the petroleum product. *See, e.g., State of Washington v. Time Oil Co.,* 687 F.Supp. 529, 532 (W.D.Wash.1988) (contaminants in excess of amounts that would have occurred during the

---

3. Title 42 U.S.C. § 9601(14) defines a "hazardous substance" as:

(A) any substance designated pursuant to section 1321(b)(2)(A) of Title 33, (B) any element, compound, mixture, solution, or substance designated pursuant to section 9602 of this title, (C) any hazardous waste having the characteristics identified under or listed pursuant to section 3001 of the Solid Waste Disposal Act [42 U.S.C.A. § 6921] (but not including any

waste the regulation of which under the Solid Waste Disposal Act [42 U.S.C.A. § 6901 et seq.] has been suspended by Act of Congress), (D) any toxic pollutant listed under section 1317(a) of Title 33, (E) any hazardous air pollutant listed under section 112 of the Clean Air Act [42 U.S.C.A. § 7412], and (F) any imminently hazardous chemical substance or mixture with respect to which the Administrator has taken action pursuant to section 2606 of Title 15....

oil refining process and substances that would not have occurred due to the refining process do not fall under the petroleum exclusion).

Our court has not yet addressed the question whether the separated sediment and water that constitute crude oil tank bottoms fall within CERCLA's petroleum exclusion. This is the issue that we must decide.

The Coses contend that crude oil tank bottoms are discarded *waste* products and not fractions of the crude oil. Hence, the Chrysene, which is part of the tank bottom material dumped at the Gravel Pit, does not fall within the petroleum exclusion. In contrast, Getty Oil contends that crude oil tank bottoms are *components* of the crude oil. Hence, because the concentration level of the Chrysene found in the Gravel Pit does not exceed the concentration level found in regional crude oil, the tank bottoms fall within the petroleum exclusion. We address each argument in turn.

**A. Argument that Crude Oil Tank Bottoms Are Not "Petroleum, Including Crude Oil or a Fraction Thereof" Under CERCLA, 42 U.S.C. § 9601(14)**

*1. Definition of "Fraction" and "Petroleum"*

As a starting point, we will examine the definitions of the words "fraction" and "petroleum." Our court took judicial notice of these definitions in *Wilshire Westwood Assoc. v. Atlantic Richfield,* 881 F.2d at 803. In *Wilshire,* we defined "fraction" to mean "one of several portions (as of a distillate or precipitate) separable by fractionation and consisting either of mixtures or pure chemical compounds." *Id.* (citing *Webster's Third New International Dictionary Unabridged* (1981)).

Likewise, in *Wilshire* we defined "petroleum" as:

[A]n oily flammable bituminous liquid ... that is essentially a compound mixture of hydrocarbons of different types with small

amounts of other substances (as oxygen compounds, sulfur compounds, nitrogen compounds, resinous and asphaltic components, and metallic compounds) ... and *that is subjected to various refining processes* (a fractional distillation, cracking, catalytic reforming, hydroforming, alkylation, polymerization) *for producing useful products* (as gasoline, naphtha, kerosene, fuel oils, lubricants, waxes, asphalt, coke, and chemicals....)

*Id.* (emphasis added). Crude oil tank bottoms do not fall within the plain meaning of the definition of "fraction" or "petroleum."

Crude oil tank bottoms are comprised of water and sedimentary solids that settle out of the crude oil and create a layer of waste at the bottom of the crude oil storage tanks. Such tank bottoms accumulate naturally *before* the crude oil even reaches the refinery. Crude oil tank bottoms are not "one of several portions separable by fractionation" of crude oil, as required by our definition of "fraction."

Likewise, crude oil tank bottoms are never "subjected to various refining processes" as required by our "petroleum" definition.[4] Moreover, such tank bottoms are not used "for producing useful products." Rather, as evidenced at the Gravel Pit property, the substance is simply discarded waste.

Accordingly, the definitions of "fraction" and "petroleum" as adopted by our court urge a conclusion that crude oil tank bottoms *do not* fall within CERCLA's exclusion of "petroleum, including crude oil or a fraction thereof."

*2. United States v. Western Processing Co.*

The only federal court to address whether tank bottom material is "petroleum" applied reasoning similar to the reasoning reflected in the definition of petroleum. In *United States v. Western Processing Co.,* 761 F.Supp. at 721, the district court concluded that "tank bottom sludge is a contaminated

---

**4.** The separation of the tank bottoms from the crude oil does not occur as part of the "fractional distillation" process. Rather, fractional distillation is an industrial (refinery) process whereby

the crude oil is partially vaporized and the vapor and residue recovered separately. *Encyclopedia of Chemistry,* "Distillation," at 326 (4th ed. 1984).

waste product, and *not a petroleum fraction, as that term is used in [CERCLA]." Id.* (emphasis added).[5]   In so ruling, the court focused in part on the tank bottom's status as "waste" in contrast to a useful petroleum product, which *would be* considered a petroleum fraction under CERCLA.

The decision in *Western Processing* relied heavily on EPA interpretations of CERCLA's petroleum exclusion. In so doing, the district court noted that, as the agency with the relevant CERCLA expertise, EPA's interpretations of the petroleum exclusion are entitled to "considerable deference." *Id.* The court further observed that "the [EPA's] interpretations harmonize the petroleum exclusion with the goal of CERCLA in order that the fullest remedial nature of the statute may be realized." *Id.*

The district court noted a "theme" running through two EPA documents: that *wastes are distinguishable from recyclables. Id.* The court cited an EPA Final Rule published April 4, 1985 in which the EPA states in Section 1, Hazardous Substances Subject to This Rule, a. ICRE Substances:

> If a nondesignated ICR substance is spilled and immediately cleaned up for repackaging, reprocessing, recycling, or reuse, it is not a waste and the spill need not be reported.
>
> ... However, if the substance is not cleaned up for eventual disposal, it is then a waste (and thus a hazardous substance) which has been released to the environment and must be reported if it exceeds the RQ.
>
> ... [T]oday's final rule has been clarified to show the distinction between substances that are wastes prior to their initial release

and substances that become wastes after their initial release.

*Id.*

Similarly, the court in *Western Processing* cited a December 13, 1990 EPA Memorandum, which stated that "[t]he wastes from the interior of the tank [that] include *unrecovered* product, water, sludge, scale, etc. *are presumed to be hazardous....* The only method to remove the presumption is to test the waste for characteristics of a hazardous waste." *Id.* (citation omitted) (emphasis added).

Applying the EPA's approach, the court in *Western Processing* held:

> [The] tank bottom material was certainly "waste" as it was being hauled away for disposal, not for reuse. For whatever reason Congress may have elected to treat "petroleum" releases differently under CERCLA, *conceptually there is a difference between releases of petroleum, products from tanker spills or from leaking storage tanks and the delivery of petroleum related waste material to a disposal or treatment facility.* The former releases have unique characteristics, while in the latter case, the wastes are just one more waste product delivered to a facility where other such wastes accumulated from deliveries by others.

*Id.* at 721 (emphasis added).

Here, the crude oil tank bottoms are clearly "waste materials." Getty Oil disposed of the tank bottom materials with no intention of recycling such materials.[6]   Hence, the "waste vs. recyclable" distinction further supports a conclusion that crude oil tank bottoms are *not* a fraction of crude oil and that the tank bottoms therefore do not fall within CERCLA's petroleum exclusion.[7]

---

5.  It is important to note that *Western Processing* is factually distinguishable from the case at hand because that case involved tank bottom material to which sand and rust contaminants from the sides of the storage tanks had been added.  Here, the Coses do not contend that the tank bottoms that were disposed of in the Gravel Pit property were contaminated with any substances other than those that separated from the stored crude oil.  Nonetheless, much of the *Western Processing* analysis is relevant to the case at hand.

6.  Getty Oil's argument that the discarded tank bottoms may indeed be "recyclable" at this time is irrelevant because Getty disposed of the substances with no intention to recycle or reuse such materials, as evidenced by the fact that the company sold the Gravel Pit to the Coses without attempting any reuse options.

7.  As further support for the contention that Congress intended the petroleum exclusion to protect "useful" products only, the Coses also note additional CERCLA language that excludes "natural gas, natural gas liquids, liquefied natural gas, or

### 3. *Legislative History*

CERCLA's legislative history regarding the scope of the petroleum exclusion lends further support for the conclusion that tank bottom substances disposed of in dump sites do not fall within CERCLA's petroleum exclusion. An EPA Memorandum dated July 31, 1987, which specifically addresses the petroleum exclusion, characterizes these remarks of Congresswoman Mikulski as reflecting Congressional intent:

> I realize that it is disappointing to see no oil-related provision in the bill, but we must also realize that this is our only chance to get hazardous waste dump site cleanup legislation enacted.

> Moreover, there is already a mechanism in place that is designed to deal with spills in navigable waterways. There is not, however, any provision currently in our law that addresses the potentially ruinous situation of abandoned toxic waste sites.

EPA Memorandum, July 31, 1987 (citing 126 Cong.Rec. H11796) (daily ed. December 3, 1980). Congresswoman Mikulski's remarks indicate that CERCLA's focus is on cleanup of hazardous waste dump sites. We should interpret the petroleum exclusion in light of CERCLA's overall purpose. This purpose further compels us to conclude that crude oil tank bottoms, which include hazardous components such as Chrysene, that are dumped at waste sites should not find protection under CERCLA's petroleum exclusion.

### B. The District Court's Grant of Summary Judgment

■ The district court based its decision to grant summary judgment in favor of Getty Oil on: (1) a 1981 EPA Memorandum that states that petroleum waste or waste oil[8] not specifically listed under the Resource Conservation and Recovery Act ("RCRA") is excluded from the definition of "hazardous substance" under CERCLA;[9] and (2) a 1982 opinion by the EPA General Counsel that

states that the petroleum exclusion encompasses hazardous substances inherent in petroleum, but not those added to or mixed with petroleum or those found at concentrations exceeding those normally found in petroleum. A closer review of these considerations indicate that the district court erred in its conclusion of law.

The 1981 and 1982 memoranda do not bear upon whether crude oil tank bottoms are "petroleum" within the meaning of CERCLA. As discussed above, crude oil tank bottoms are not "petroleum waste" or "waste oil" because such tank bottoms are not "petroleum" to begin with. Crude oil tank bottoms are merely comprised of water and suspended solids that settle out of crude oil and collect at the bottom of the crude oil storage tanks en route to the refineries. The 1981 and 1982 memoranda on which the district court relied in granting summary judgment address the application of the petroleum exclusion to a *petroleum* product, either one that is a "waste" petroleum product or one that contains indigenous hazardous products. Because crude oil tank bottoms are not "petroleum products," the memoranda do not apply.

■ The district court further based its decision to grant summary judgment on the fact that *leaded* tank bottoms in the refining industry are specifically listed as "hazardous substances" under CERCLA. Getty Oil argued that such listing demonstrates that the EPA considered tank bottoms *in general* in establishing the "hazardous substances" list. Accordingly, Getty Oil contends that the EPA implicitly decided *not* to list *crude oil* tank bottoms as a hazardous substance. Getty Oil concludes then that we should deem crude oil tank bottoms to fall within CERCLA's petroleum exclusion. As support, Getty Oil cites an EPA advisory letter dated May 21, 1981 from the Chief of EPA's Discovery and Investigation Branch to Mobil

---

synthetic gas *usable for fuel.* . . ." from the definition of "hazardous substance." 42 U.S.C. § 9601(14).

**8.** The EPA subsequently interpreted "waste oil" to include only *unadulterated* waste oil. EPA Memorandum, July 31, 1987, n. 2.

**9.** Crude oil tank bottoms are not specifically listed under RCRA.

Oil. The letter concluded that, despite the specific listing of leaded tank bottoms in the oil *refining* industry as "hazardous substances" under CERCLA, leaded tank bottoms in the petroleum *marketing* industry fall *within* the petroleum exclusion.

Getty Oil's argument, however, incorrectly assumes that *all* types of tank bottoms are considered "petroleum, including crude oil or a fraction thereof" under CERCLA. In this way, Getty argues that, unless a particular type of tank bottoms is *specifically* listed as a hazardous substance and thereby removed from the petroleum exclusion, we must assume that such tank bottoms fall within CERCLA's petroleum exclusion.

In interpreting CERCLA's petroleum exclusion, however, we can identify critical distinctions between *leaded* tank bottoms and *crude oil* tank bottoms. *Leaded* tank bottoms consist of waste generated from cleaning leaded gasoline storage tanks. Patricia Broussard–Welther, *Thermal Desorption Meets BDAT Standards at Louisiana Refinery*, Oil & Gas Journal, Nov. 2, 1992, at 58. As such, such substances have been "subjected to various refining processes" in the production of leaded gasoline. Leaded gasoline in turn is considered a "useful product" within the definition of petroleum, as judicially noticed by our court. *See Wilshire*, 881 F.2d at 803.

Accordingly, leaded tank bottoms constitute "petroleum or a fraction thereof" under CERCLA. As the EPA has observed, *leaded* tank bottoms will fall within the petroleum exclusion, *unless otherwise excluded as a "hazardous substance" under CERCLA. See* 40 C.F.R. § 302.4.

In contrast, as discussed in detail above, *crude oil* tank bottoms are *not* "petroleum, including crude oil or a fraction thereof" under CERCLA and therefore do not fall within CERCLA's petroleum exclusion in the first instance. *See* discussion *supra.* Hence, unlike *leaded* tank bottoms, crude oil tank bottoms do not have to be specifically exempt from the petroleum exclusion as a "hazardous substance" to invoke CERCLA. Accordingly, the fact that crude oil tank bottoms are not listed as a "hazardous substance" under CERCLA does not preclude CERCLA's application.

Getty Oil also cites as support a statement made by Senator Simpson during Senate debate on related legislation, the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), Pub.L. 99–499, 100 Stat. 1613.[10] Senator Simpson stated:

> This bill will not diminish the scope of the present petroleum exclusion. That provision, found in section 101(14) of the Act excludes from the definition of "hazardous substances" all types of petroleum, including crude oil, *crude oil tank bottoms*, refined fractions of crude oil, and tank bottoms of such which are not specifically listed or designated as a hazardous substance under the other subparagraphs of that provision.

132 Cong.Rec. S14931–32 (daily ed. Oct. 3, 1986) (emphasis added).

■■■ Post-enactment legislative history merits less weight than contemporaneous legislative history. *See Wilshire*, 881 F.2d at 806. Senator Simpson's stray comment was made *six years* after the enactment of CERCLA's petroleum exclusion, which remains unaltered to this date. Hence, we confer little, if any, weight to the comment.

**C. Application of Non–Petroleum Classification**

■■■ Because we conclude that the crude oil tank bottoms here at issue are not "petroleum" and therefore not subject to CERCLA's exclusion, the Chrysene found within the Gravel Pit's environmental samples is properly viewed as an independent "hazardous substance," rather than as a component of petroleum. Liability is imposed under

**10.** In 1986, Congress enacted Section 205 of SARA, which amended subtitle I of the Solid Waste Disposal Act by adding Section 9003(h), 42 U.S.C. § 6991b(h). Section 9003(h) established a separate response program for petroleum leaking from underground storage tanks. SARA did not alter the meaning of the petroleum exclusion initially set forth under CERCLA but did amend CERCLA by adding a definition of the term "pollutant or contaminant" to CERCLA in Section 101(33), 42 U.S.C. § 9601(33). *See Wilshire*, 881 F.2d at 807. This definition contains a petroleum exclusion identical to the exclusion in Section 9601(14).

CERCLA *regardless of* the concentration of the hazardous substances present in a defendant's waste, *as long as* the contaminants are listed "hazardous substances" pursuant to 40 C.F.R. § 302.4(a). *See Louisiana–Pacific Corp. v. Asarco, Inc.*, 735 F.Supp. 358, 361 (W.D.Wa.1990), *aff'd* 909 F.2d 1260 (9th Cir. 1990). Hence, the Coses need only show *the presence* of Chrysene to recover cleanup costs from Getty Oil under Sections 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3). Because the presence of Chrysene in the Gravel Pit is undisputed, we reverse the district court's grant of summary judgment and remand this matter to the district court for further proceedings consistent with this opinion.

REVERSED and REMANDED.